IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PICNIK HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-897-RP |
| | § | |
| BENTO PICNIC, LLC, and LEANNE VALENTI, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is a motion for summary judgment filed by Defendants Bento Picnic, LLC ("Bento Picnic") and Leanne Valenti ("Valenti") (together, "Defendants"). (Dkt. 8). Also before the Court is Defendants' motion to strike certain exhibits attached as evidence to Plaintiff Picnik Holdings, LLC's ("Picnik") response. (Dkt. 22). Having considered the parties' submissions, the record, and the applicable law, the Court will deny the motion to strike and grant the motion for summary judgment.

## I. BACKGROUND

Picnik and Bento Picnic are Austin restaurants that both sell health-conscious offerings. Picnik was founded in 2013 as an Austin food trailer that served "wholesome and convenient food" such as "gluten-free grab-and-go breakfast and lunch items" with a focus on locally sourced ingredients. (Resp. Mot. Summ. J., Dkt. 20, at 2). Picnik opened a permanent location on Burnet Road in Austin in 2016, followed by a second food trailer and a California store in 2017. (*Id.*). In its self-presentation, Picnik emphasizes its drink menu, which includes butter coffee, tea, and bone

broth. (Picnik Menu, Dkt. 8-1, at 39;[1] About Us, Dkt. 8-1, at 20; Product FAQs, Dkt. 8-1, at 67). Picnik also offers a variety of "100% Gluten, Corn, Peanut, and Soy Free" foods, ranging from breakfast items such as bacon-and-egg tacos and hash to lunch or dinner entrees such as soups and salads, cauliflower steak, and Thai red curry. (Picnik Menu, Dkt. 8-1, at 41–44). The restaurant's goal is to offer convenient, nutritious meals for people with common food allergies or who practice contemporary diets such as Paleo or Whole30. (Compl., Dkt. 1, at 2).

Bento Picnic, meanwhile, was launched as a catering business in the fall of 2014 when Valenti commissioned a logo for her business, registered the domain name for her website, and started posting on the new business's Instagram account. (Mot. Summ. J., Dkt. 8, at 5). She later expanded the business to include a farmers-market tent and kiosk in 2016, followed by the restaurant that opened on East Cesar Chavez Street in 2018. (*Id.*). Bento Picnic's menu consists of customizable, portable boxes filled with the customer's choice of a rice, noodle or salad base; a protein; and vegetables. (Bento Picnic Menu, Dkt. 8-1, at 151). Valenti composed the menu based on the Japanese-style bento lunch after traveling to Japan in 2011 and designed the menu to comport with Japanese cooking principles. (Valenti Decl., Dkt. 8-1, at 4, 7). The menu includes certain Japanese items, such as gyoza and tamagoyaki. (Bento Picnic Menu, Dkt. 8-1, at 152). Bento Picnic serves drinks such as tea and coffee (but not butter coffee), and its meals are designed to be conveniently taken to go. (*Id.*; Valenti Decl., Dkt. 8-1, at 4–5)).

Picnik believes that Bento Picnic has infringed and diluted its trademarks in violation of federal and state law.[2] Picnik's trademarks include the following registered marks:

---

[1] Citations to the parties' summary judgment evidence are made to the page number of the combined PDF containing the parties' exhibits, not to the parties' own pagination or to the exhibits' original pagination.

[2] Picnik asserts causes of action for: (1) trademark infringement in violation of 11 U.S.C. § 1114; (2) unfair competition in violation of 15 U.S.C. § 1125(a); (3) trademark infringement in violation of Texas common law; (4) trademark dilution in violation of Texas Business and Commerce Code § 16.103; (5) unfair competition in violation of Texas common law; and (6) unjust enrichment. (Compl., Dkt. 1, at 7–8).




(USPTO Certificates, Dkt. 1-1). Bento Picnic, meanwhile, uses the following marks:




(Mot. Summ. J., Dkt. 8, at 15). Picnik's claims, however, implicate only one of its marks (the "PICNIK mark"):




(Compl., Dkt. 1, at 5; Resp. Mot. Summ. J., Dkt. 20, at 6). Picnik alleges that Bento Picnic is infringing on its PICNIK mark by using "Bento Picnic" "in association with its competing restaurant services." (Compl., Dkt. 1, at 5). According to Picnik, the two businesses are in competition because Bento Picnic provides "grab-and-go meals, as well as a traditional restaurant service that caters to those with dietary restrictions such as gluten-free, dairy-free, and Whole30 approved diets, as well as touting locally sourced ingredients." (*Id.*).

After Defendants filed their answer and before the Court set an initial pretrial conference, Defendants filed the instant motion for summary judgment. (Dkt. 8). The Court then extended Picnik's deadline to respond and authorized a three-month period for discovery related to Defendants' motion. (Dkt. 16). After conducting the necessary discovery, Picnik filed its response, (Dkt. 20), and Defendants filed their reply, (Dkt. 23). Defendants also moved to strike several of Picnik's exhibits, (Dkt. 22), but the Court will deny that motion as moot, because consideration of those exhibits would not alter the Court's resolution of Defendants' motion for summary judgment.

## II. LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient

to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

## III. DISCUSSION

Given the nature of Picnik's claims, four of them—federal trademark infringement, Texas common-law trademark infringement, federal unfair competition, and Texas common-law unfair competition—are subject to the same rules and standards. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." (citation and quotation marks omitted); *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 711 (S.D. Tex. 2009) ("The same legal standard applies to Lanham Act infringement claims, Texas statutory trademark infringement claims, Texas common-law trademark infringement claims, and federal and state unfair competition claims."). The Court will analyze those claims together. Afterward, the Court will separately consider Picnik's claims for trademark dilution and unjust enrichment.

### A. Trademark Infringement and Unfair Competition

To prevail on a claim of federal trademark infringement under the Lanham Act, a plaintiff must show: "(1) ownership of a legally protectable mark and (2) a likelihood of confusion created by an infringing mark." *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018). For

the purposes of this motion, Defendants do not contest that the PICNIK mark is legally protectable. (Mot. Summ. J., Dkt. 8, at 7). Only the likelihood of confusion between the PICNIK mark and "Bento Picnic" is at issue. On that element, Picnik has the ultimate burden to establish that Defendants' use of "Bento Picnic" creates "a likelihood of confusion in the minds of potential customers as to the 'source, affiliation, or sponsorship' of the product or service at issue." *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000)). "'Likelihood of confusion' means more than a mere possibility; the plaintiff must demonstrate a probability of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009) (citing *Smack Apparel*, 550 F.3d at 478).

In determining whether a plaintiff has demonstrated a probability of confusion, courts look at eight "digits of confusion": "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id.* at 227. No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors. *Smack Apparel*, 550 F.3d at 478. While probability of confusion is "typically a question of fact, summary judgment is proper if the 'record compels the conclusion that the movant is entitled to judgment as a matter of law.'" *Xtreme Lashes*, 576 F.3d at 227 (quoting *Smack Apparel*, 550 F.3d at 474).

Viewing the evidence in the light most favorable to Picnik, several digits of confusion tilt in its favor. The PICNIK mark is, at least, suggestive,[3] entitling it to protection. *See id.* (finding that the plaintiff's mark "has many of the indicia of a suggestive mark and is therefore entitled to

[3] "Marks are normally assigned to 'categories of generally increasing distinctiveness': (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." *Xtreme Lashes*, 576 F.3d at 227 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.* (citing *Two Pesos*, 505 U.S. at 768).

protection") (citation and quotation marks omitted). Both Picnik and Bento Picnic advertise in the same media—principally, Instagram and Facebook—and participate in the popular food-delivery platform Favor. (Valenti Dep., Dkt. 20-3, at 10; Seifert Decl., Dkt. 20-1, ¶ 9). Both companies sell low-cost food and drink (mostly $5 to $20), which are not the types of products ordinarily purchased with a "high degree of care." *Smack Apparel*, 550 F.3d at 483 (reaching the same finding for $18-and-under clothing). Both companies target a similar set of purchasers: "health-conscious working professionals with a variety of dietary preferences and requests." (Valenti Decl., Dkt. 8-1, at 7; Seifert Decl., Dkt. 20-1, ¶ 8). And a handful of Picnik's employees have testified to instances of actual confusion: common vendors delivering Bento Picnic orders to Picnik, customers showing up to Picnik asking for "noodle bowls" (which only Bento Picnic sells), and a friend remarking that Picnik and Bento Picnic are "the same thing, right?" (*See* Resp. Mot. Summ. J., Dkt. 20, at 10).

On the other side of the equation, however, are a group of factors that, even viewed in the light most favorable to Picnik, do not tilt in favor of confusion. First, intent: there is no evidence that Valenti intended to infringe the PICNIK mark. She commissioned the BENTO + PICNIC logo and started posting on Instagram via the "bentopicnic" account in 2014, the year before she even learned of Picnik. (Valenti Decl., Dkt. 8-1, at 5). Second, retailers: apart from using Favor, the two companies do not sell their food via common retailers; they sell their products out of their own branded stores, kiosks, and food trailers. Finally, and critically, the two companies sell different products under different marks.

Regarding products, Picnik markets itself as a fast-health-food company that focuses on food allergies and restrictive diets. Online, Picnik describes itself as "one of the first paleo-friendly concepts in Austin." (Picnik's "Our Story" Page, Dkt. 8-1, at 20). Its menu prominently boasts that its food is "100% Gluten, Corn, Peanut, and Soy Free." (Picnik Menu, Dkt. 8-1, at 42–43). That menu includes a wide range of breakfast and lunch items, such as chorizo frittata, French toast,

breakfast tacos, chicken tenders, soups and salads, cauliflower steak, and Thai-style curry. (*Id.* 42–44). On top of its food, Picnik places such an emphasis on butter coffee, which occupies a full menu page and has its own pages on Picnik's website, that journalists describe the company as a "Texas-based butter coffee maker." (Bevnet Article, Dkt. 8-1, at 35; "Butter Coffee 101" Picnik Webpage, Dkt. 8-1, at 47; Picnik Menu, Dkt. 8-1, at 41). Bento Picnic, meanwhile, sells almost nothing on Picnik's menu. It does not sell breakfast items—it's not even open for breakfast—does not sell soup, does not sell tacos, and does not sell chicken tenders. (Bento Picnic Menu, Dkt. 8-1, at 151).

What Bento Picnic does sell are customizable box meals "[i]nspired by Japanese homemakers," comprised of a base (greens, noodles, or rice), a protein (such as chicken or salmon), and seasonal vegetables and pickles. (*Id.*). Consistent with its Japanese-themed name, Bento Picnic's sides include Japanese foods, such as a "Tamagoyaki Egg," "Japanese Pumpkin + Potato Salad," "Miso Soup," and "Gyoza." (*Id.* at 151–52). Bento Picnic also sells bowl-meals, such as a Japanese curry bowl with quinoa rice and a teriyaki stir-fry bowl. (*Id.* at 152). Picnik sells no box meals, customizable or otherwise, no "bowls," and nothing Japanese. (Picnik Menu, Dkt. 8-1, at 41–44).

The overlap between the two restaurants' offerings is only slight. Picnik emphasizes that both restaurants serve coffee, chocolate-chip cookies, and kombucha, and it compensates for this relatively small overlap by describing the restaurants' menus at a highly abstracted level, insisting that the parties' services are "identical" because "[b]oth [restaurants] offer Whole30 compliant diets" and both offer "options for those with special dietary needs." (Resp. Mot. Summ. J., Dkt. 20, at 7). Characterizing the parties very different menus abstractly is perhaps the most favorable light in which to view this evidence for Picnik, but even so viewed, the menus' differences dwarf their similarities. Bento Picnic puts its Japanese-cuisine emphasis up front—it is in the first word in the company's name and appears at the top of its menu. (Bento Picnic Menu, Dkt. 8-1, at 151). Meanwhile, there is no purported Japanese influence in the paleo-friendly Texas-based butter-coffee

maker Picnik. The product-similarity factor therefore weighs heavily in Bento Picnic's favor: a consumer, health-conscious or otherwise, is not likely to confuse a Japanese-style bento-box restaurant with a place known for its butter coffee.

As for the companies' marks, Picnik does not bother arguing that the two companies' signs or logos look similar. (*See* Resp. Mot. Summ. J., Dkt. 20, at 6–7). Picnik's silence tacitly admits what a visual comparison makes clear: the companies signs and logos look very different.

| PICNIK | BENTO • PICNIC |
|---|---|
| PIC NIK | BENTO PICNIC |
| PIC NIK | BENTO + PICNIC |
| PICNIK austin | BENTO • PICNIC |

(USPTO Certificates, Dkt. 1-1; Mot. Summ. J., Dkt. 8, at 15). Indeed, instead of reconciling the visual and audible differences between the companies' signs and logos as they appear—in color, in font style, in word choice and spelling—Picnik presents a black-and-white version of just one of Bento Picnic's logos and insists that it is "extremely similar in both sound and presentation" to just one of Picnik's marks:

| PICNIK | BENTO • PICNIC |
|---|---|

(Resp. Mot. Summ. J., Dkt. 20, at 6; *see also* Compl., Dkt. 1, at 5). But there is no evidence in the record to suggest that Bento Picnic ever uses the black-and-white mark to which Picnik addresses its only mark-similarity argument.

Typically, in comparing the similarity of two or more marks, the Court would consider whether the marks are distinguishable, and if they are, whether "under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." *Xtreme Lashes*, 576 F.3d at 228. The Court would compare the marks' "appearance, sound, and meaning," *Smack Apparel*, 550 F.3d at 479, taking account of "the total effect of the designation" rather than "a comparison of individual features," as well as "the context of use," such as labels and advertising. *Xtreme Lashes*, 576 F.3d at 228 (citations omitted).

But to infringe another's mark at all, "the infringing mark must be used in commerce." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 197 (5th Cir. 1998) (citing 15 U.S.C. § 1114). Bento Picnic has made its initial showing that there is no evidence to support Picnik—the nonmoving party's—case for mark similarity. (Mot. Summ. J., Dkt. 8, at 14–16). The burden therefore shifts to Picnik to "come forward with competent summary judgment evidence of the existence of a genuine fact issue" at to mark similarity, *Matsushita*, 475 U.S. at 587, which means—at minimum—identifying

a similar mark that is used in commerce. Because Picnik has failed to do so, the Court must conclude that there is no evidence that any of Bento Picnic's marks are similar to any of Picnik's.

At bottom, the question before the Court is whether submitting the case to a rational trier of fact would be "preordained." *Xtreme Lashes*, 576 F.3d at 231–32 (quoting *Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners, Inc.*, 41 F.3d 223, 226 (5th Cir. 1995)). It would be. Picnik's evidence of actual confusion, credited at this stage in the litigation, demonstrates that confusion of the two restaurants is *possible*, but Picnik's burden is to show the *probability* of confusion, not the mere possibility. *Id.* at 226. No reasonable trier of fact, confronted with these two very different restaurants and given no evidence of similar marks, could conclude that consumers are likely to be confused between the two. Summary judgment in Bento Picnic's favor is warranted as to Picnik's trademark infringement and unfair-competition claims.

**B. Trademark Dilution**

In addition to trademark infringement, Picnik alleges that Bento Picnic has diluted "the PICNIK Marks in violation of Texas Business and Commerce Code § 16.29."[4] (Compl., Dkt. 1, at 8). Under Texas law, the owner of a famous mark may seek to enjoin another person's commercial use of a mark that begins after the famous mark becomes famous if use of the later mark is likely to cause dilution of the famous mark. Tex. Bus. & Com. Code § 16.103(a). Bento Picnic argues that there is no evidence that the PICNIK mark was famous—or that Picnik's graphic marks were in use at all—before Bento Picnic first commercially used its marks in 2015. (Mot. Summ. J., Dkt. 8, at 20). In response, Picnik has the burden to produce competent summary judgment evidence that raises a genuine issue of fact as to whether Bento Picnic began commercially using one or more of its marks after one of Picnik's marks became famous. *Matsushita*, 475 U.S. at 587.

[4] Texas recodified its anti-dilution statute in 2011 under Texas Business and Commerce Code § 16.103. *See Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1172 (S.D. Tex. 2016).

It has not met that burden for two reasons. First, Bento Picnic began to use its marks commercially in February 2015. (Reply Mot. Summ. J., Dkt. 23, at 9–10). Picnik has not produced enough evidence for a reasonable jury to conclude that its PICNIK mark was famous before February 2015. (*See* Resp. Mot. Summ. J., Dkt. 20, at 12).[5] Second, and more critically, Picnik does not identify anywhere in its pleading or briefing which of Bento Picnic's marks diluted the PICNIK mark. (*See id.*). Even if its own mark is famous, Picnik cannot meet its summary judgment burden to establish that one of Bento Picnic's marks likely diluted Picnik's famous mark without so much as identifying the dilutive mark. Summary judgment in Bento Picnic's favor is warranted as to Picnik's trademark dilution claim.

**C. Unjust Enrichment**

Finally, Picnik asserts a claim for unjust enrichment based on the alleged acts of trademark infringement, unfair competition, and trademark dilution. (Compl., Dkt. 1, at 8). "Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Picnik does not even attempt to articulate a basis for its unjust enrichment claim apart from its trademark infringement claim. Having concluded that no reasonable jury could find that Bento Picnic infringed or diluted Picnik's trademarks, the Court finds

[5] In determining whether a mark is famous, a factfinder may consider factors such as "(1) the duration, extent, and geographic reach of the advertisement and publicity of the mark in this state, regardless of whether the mark is advertised or publicized by the owner or a third party; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark in this state; (3) the extent of actual recognition of the mark in this state; and (4) whether the mark is registered in this state or in the United States Patent and Trademark Office." Tex. Bus. & Com. Code § 16.103(b). Picnik has produced an Austin Chronicle review from 2013, a 2014 review on threedietsonedinner.com, and a statement from its founder that the company had a "very big showing at PaleoFX" in 2014. (Coverage Excerpts, Dkt. 20-11, at 68–75, 146–56; Seifter Decl., Dkt. 20-1, ¶ 5). No reasonable jury could conclude from this limited evidence that the PICNIK mark was famous before February 2015.

no evidence to support the conclusion that Bento Picnic has wrongly obtained a benefit or taken undue advantage of Picnik. Bento Picnic is therefore entitled to summary judgment as to this claim as well.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment, (Dkt. 8), is **GRANTED**. Defendants are entitled to summary judgment as to all of Picnik's claims against them. Defendants' motion to strike, (Dkt. 22), is **DENIED AS MOOT**. Final judgment will be entered in a separate order.

**SIGNED** on June 18, 2019.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE